Frederick J. Villafranca and Thelma Villafranca v. Commissioner.
Villafranca v. Commissioner
Docket No. 3692-62.
United States Tax Court
T.C. Memo 1965-18; 1965 Tax Ct. Memo LEXIS 312; 24 T.C.M. (CCH) 76; T.C.M. (RIA) 65018; February 3, 1965
*312 Irwin G. Waterman, 600 Marion E. Taylor Bldg., Louisville, Ky. 40202, for the petitioners. Dennis M. Feeley, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The Commissioner has determined deficiencies in the petitioners' income tax for the calendar year 1959 in the amount of $18,512.52. Concessions have been made by petitioners and the sole remaining issue concerns the deduction in such year of $27,625 by petitioners' partnership as an estimate of the future costs of providing dance instructions to which a part of the 1959 income was attributable and which was labeled on the 1959 partnership return as "Teaching Expense - Reserve." Some of the facts have been stipulated and are so found. The petitioners are husband and wife residing in Louisville, Kentucky. They filed their joint Federal income tax return and the return for their partnership, which they owned equally and which was known as Arthur Murray School of Dancing, Louisville, Kentucky, with the district director of internal revenue, Louisville, Kentucky; each return covering the calendar year 1959. Petitioners had owned and operated their partnership for a number *313 of years prior to the year in issue and it was at all relevant times engaged in the business of selling dancing instruction to its customers. Such sales were made on the basis of individual "non-cancellable" contracts, each of which (with unimportant exceptions) provided for a specified number of hours of such instruction. The usual procedure upon the sale of a contract was for the partnership to set up a standing appointment with the student at the same time and on the same day or days of every week and far enough in advance to exhaust the number of hours called for by the contract. If possible, such schedules were set up on the minimum basis of 4 hours of instruction per week. During the calendar year 1959 the partnership had, under such contracts, sold 13,812 1/2 hours of dancing instruction which remained untaught at the end of such calendar year. During such year the partnership had received payment for 9,444 of these hours. The said 13,812 1/2 hours were taught or disposed of as follows: 1960
Taught
7,192 1/2
Charged off
407 1/2
1961
Taught
2,558
Charged off
360
1962
Taught
870
Charged off
174
Sold or Taught
1,660 *
1963
Taught
302 1/2
Charged off
None
Carried on In-
ventory at
12/31/63
288
Total
13,812 1/2
*314 Students were urged to call ahead of time if they found it impossible to keep a scheduled appointment and the partnership was cooperative in rescheduling such an appointment. When a student simply failed to appear it was the partnership's practice to call him several times in an effort to get the appointments rescheduled and the student again active. This follow-up procedure was maintained without reference to whether the student's contract had been fully paid. The partnership's teachers were paid on a per-hour per-student basis and without reference to whether or not the student's contract had been fully paid. During 1959 such teachers were paid at the rate of $2 an hour for the first 15 student hours taught in a given week, $3 an hour for the second 15 hours taught, and $3.50 an hour for all such hours over 30 which were taught in a week. Individual student contracts usually provided for from 5 hours to 100 hours of instruction but some were much larger and provided for as many as 200 or 300 hours of such instruction. Prior to 1956 the partnership had kept its books and *315 prepared its Form 1065 (U.S. Partnership Return of Income) on an accrual basis which included receipts into income on the basis of hours taught rather than on the basis of cash received. In 1956 an agent of the internal revenue service audited the partnership's books and returns. Thereafter and for the year in issue the partnership reported as gross income on its return of income form, aforesaid, the amount of cash it had received during calendar year 1959. It continued to keep its books on the basis of taking receipts into income as hours of instruction were taught. For the year in issue the partnership for the first time took as an expense to be deducted from gross income on its return of income form, aforesaid, a "Teaching Expense - Reserve" in the amount of $27,625. This provision for teaching expense for the year in issue included no overhead but was based solely upon the teachers' minimum pay of $2 per hour multiplied by the number of hours remaining untaught as of the end of the calendar year 1959. In years subsequent to the year in issue the actual expense of teaching these hours was reduced by $2 per hour as such hours were taught, sold, or written off. The teachers' actual *316 remuneration for teaching these untaught hours in the 4 years subsequent to 1959 averaged between $3.08 and $3.59. The statutory deficiency notice to these petitioners recites in pertinent part that ordinary net income distributable to them from the partnership is increased by adding the reserve for teaching expense in the amount of $27,625 to the ordinary net income reported by the partnership since such amount was an estimated figure of future costs or expense which was "not deductible until paid or incurred." Petitioners' position is summarized in their petition as follows: By reason of the partnership's obligations to render dancing lessons pursuant to said written contracts, the said partnership incurs a fixed and certain liability to render dancing lessons to its customers at the time of the execution of each such written contracts. * * *
As of December 31, 1959, the partnership had a fixed and certain liability to perform 13,812 1/2 hours of teaching instruction * * * said liability being the number of hours of instruction sold during the said calendar year and then remaining untaught, and as of December 31, 1959, the minimum expense which would be incurred in the *317 teaching of said lessons in the ensuing year was $2.00 per hour, which liability is deductible as an expense from the income of the said partnership during the calendar year 1959. Petitioners initiate as an alternative argument on brief that since 9,444 of the untaught 1959 instruction hours had actually been paid for and reported as a part of gross receipts by partnership for 1959 that partnership is entitled to deduct as an accrued business expense in such year at least the sum of $18,888 based upon the same $2 per hour for teaching expense. We have here yet another in a long line of cases recently coming before the courts and involving either deferral of income or accrual of expenses to cover the estimated costs of rendering service in the future. ; ; ; ; ; . We said in : *318 While it can be argued that there are technical distinctions in deferring prepaid income and deducting estimated future expenses in cases like this the net result is the same and we think the same principles of tax accounting and the Commissioner's authority should be applied to both techniques. n3 As said in , the prepaid dues were credited to a reserve "as deferred or unearned income reflecting an estimated future service expense to members." [Footnote omitted.] This observation is equally applicable here. We feel that there is no valid basis upon which the instant case can be distinguished from , and in this regard we make no distinction between petitioners' main and alternative arguments; consequently, on the authority of such case and of the other cases cited above, Decision will be entered for the respondent. Footnotes
*. One of the studios operated by partnership together with its "business" was sold during 1962.↩